1997-NMCA-042

940 P.2d 190

**Cathy Cantu VIEIRA, Contestant–Appellant,**

v.

**The ESTATE OF Lupita S. CANTU, Deceased, and Marcos Sandoval, Personal Representative of the Estate of Lupita S. Cantu, Deceased, Petitioners–Appellees.**

No. 17355.

Court of Appeals of New Mexico.

April 14, 1997.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Contestant–Appellant.

Dennis R. Francish, Albuquerque, for Petitioners–Appellees.

Jennifer Lea Wise, John A. Darden, III, M. Lea Brownfield, State Bar of New Mexico, Real Property, Probate & Trust Section, Albuquerque, Amicus Curiae.

## OPINION

PICKARD, Judge.

1. This case requires us to decide whether the trial court erred as a matter of law by refusing to hear a will contestant's objections to the order of settlement of an estate because the petition she filed stating her objections and seeking formal probate of an alleged earlier will was filed too late. We conclude that the district court erred by improperly quashing the contestant's petition.

### BACKGROUND AND ISSUES

2. This case concerns the propriety of procedural rulings in a hearing to close a probate. The trial court held that, because the hearing had become a formal probate proceeding, a rule of civil procedure required the contestant [Vieira] to give the personal representative notice of her petition at least five days before the hearing. Because she failed to do this, the court quashed her petition. Vieira appeals, alleging as error that: (1) the personal representative's petition failed to meet the statutory requirements that commence a formal testacy proceeding; (2) Vieira timely filed her petition; (3) Vieira's petition was not barred by waiver or estoppel; and (4) the trial court's reasons for quashing the petition were faulty. We discuss: (1) informal versus formal proceedings and the statutory requirements for formal testacy proceedings; (2) timeliness under both the statute and rules of civil procedure; (3) waiver and estoppel; and (4) other reasons given by the trial court.

### FACTS

3. Lupita S. Cantu died on September 11, 1995. The provisions in a will that she executed on September 5, 1995, left a house to her brother and his wife, Marcos and Stella Sandoval, and $2000 to her deceased husband's granddaughter, Cathy Vieira. Mr. Sandoval applied to the district court for appointment as the estate's personal representative [PR], and for an order of informal probate of the will. The district court granted his request on September 19, 1995. Notice of the informal probate of the will was given by mail to Vieira, among others, on September 26, 1995.

4. On November 22, 1995, the PR executed a Personal Representative Deed of the property to himself and his wife and recorded the deed with the county clerk. The PR then petitioned on December 14, 1995, for a hearing to approve the final accounting and to discharge him. The court granted the petition for the hearing, and set January 16, 1996, as the date for the hearing. Both the request for hearing and the notice of hearing were mailed to Vieira on December 14, 1995.

5. Immediately before the hearing, Vieira cross-petitioned to formally probate an earlier will. Her verified petition alleged that an earlier will had given her the house, and that she believed the later will to be invalid as a result of the PR's undue influence. Regarding the earlier will, Vieira alleged specifically that her father had seen the will devising Vieira the property, but could not find the original or the copy of that will. Vieira also alleged that she expected to find the will through discovery.

6. The district court refused to hear Vieira's objections on the ground that she filed them too late. The court further found that the informal probate became a formal probate proceeding by the PR's petition for approval of final accounting; that because the proceeding was formal, Vieira's petition had to be served upon the PR no later than five days before the hearing, and was not; and that Vieira had not produced another will or any evidence of it, making her averments "speculative, hearsay, and without her personal knowledge." The court also found that Vieira was estopped and had waived her objections and claims. The court then ordered formal probate of the later will, closing of the estate, and discharge of the PR.

### DISCUSSION

*Statutory Requirements; Formal versus Informal*

7. The Uniform Probate Code, adopted by New Mexico, provides for both informal and formal proceedings to handle probate matters. "Informal proceedings" are "those proceedings conducted without notice to interested persons ... for probate of a will or appointment of a personal representative...." NMSA 1978, § 45–1–201(A)(22) (Repl.Pamp.1995). "Formal proceedings"

are "conducted before a judge with notice to interested persons." Section 45–1–201(A)(16). In general, the advantages of informal proceedings are that they are speedier and less costly. Under the Probate Code, an estate may be distributed and closed in a simple manner by informal proceedings without further court order. *See In re Estate of Newalla,* 114 N.M. 290, 292–93, 837 P.2d 1373, 1375–76 (Ct.App.1992). But formal proceedings provide greater certainty and finality. When a matter has been concluded by an order arising out of a formal proceeding, the decision ordinarily has certain res judicata effects.

8. Two types of formal proceedings are at issue on this appeal. One is a formal proceeding to approve the final accounting and distribution of the assets of the decedent's estate. Under NMSA 1978, Section 45–3–1001 (Repl.Pamp.1995), a PR or other interested person may petition for an order of complete settlement of the estate. After notice to all interested persons and a subsequent hearing, the district court may enter an order approving the settlement and distribution, and discharging the PR "from further claim or demand of any interested person." NMSA 1978, Section 45–3–1001(C) (Repl. Pamp.1995). (A similar type of proceeding is provided by NMSA 1978, Section 45–3–1002 (Repl.Pamp.1995). A PR administering an estate under an informally probated will may petition for an order of settlement. Under this proceeding, the devisees of the will are notified, and the final order approving a settlement and distribution discharges the PR "from further claim or demand of any devisee who is a party to the proceedings and those he represents." Section 45–3–1002(C).) A proceeding under Section 45–3–1001 can also include other matters, such as a determination of testacy. Section 45–3–1001(B)(1).

▮ 9. The second type of formal proceeding at issue on this appeal is a formal testacy proceeding. Such proceedings may be commenced by a petition to enter an order probating a will or to prevent an informal probate of a will, or a petition for an order that the decedent died intestate. NMSA 1978, Section 45–3–401(A) (Repl. Pamp.1995). In a formal testacy proceeding,

an interested person who opposes probate of the will must file a pleading objecting to the probate of the will. NMSA 1978, Section 45–3–404 (Repl.Pamp.1995). Because the validity of the will is the predicate for any distribution of the estate's assets, once a petition for formal testacy has been filed, a PR who had been informally appointed must not make any further distribution of the estate during the pendency of the formal proceeding unless the petition for formal testacy requests confirmation of the previous informal appointment. Section 45–3–401(D). Consequently, if a proceeding pursuant to Section 45–3–1001 is conducted upon a petition for final settlement and accounting, but the petition included no request to determine testacy (and there has been no prior formal testacy proceeding), then if a petition for formal testacy is filed, the proceeding under Section 45–3–1001 cannot be concluded until the formal testacy proceeding has been concluded.

▮ 10. Turning to the present case, the PR's petition for settlement and distribution of the estate was a formal proceeding pursuant to Section 45–3–1001. It was not, however, a formal *testacy* proceeding, because the petition did not seek a determination of testacy. Vieira's petition, on the other hand, was a petition for a formal testacy proceeding pursuant to Section 45–3–401. Therefore, unless it was untimely or otherwise barred, Vieira's petition took precedence; it precluded formal settlement and distribution of the estate until the formal testacy proceeding was concluded.

*Timely Filing of Vieira's Cross–Petition*

▮ 11. Vieira argues that her petition was timely filed and therefore should not have been quashed. She cites NMSA 1978, Section 45–3–108(A)(3) (Repl.Pamp.1995), which states:

A. No informal probate or appointment proceeding or formal testacy or appointment proceeding, other than a proceeding to probate a will previously probated at the testator's domicile or appointment proceedings relating to an estate in which there has been a prior appointment, may

be commenced more than three years after the decedent's death, except:

. . .

(3) a proceeding to contest an informally probated will and to secure appointment of the person with legal priority for appointment in the event the contest is successful may be commenced within the later of twelve months from the informal probate or three years from the decedent's death[.]

Vieira contends that the three-year limit of this section applies to her and prevails over any local rule of civil procedure requiring five days' notice. We agree with Vieira that the three-year limit applies to her inasmuch as the will was informally probated and any formal proceedings to close the estate that would bind her were still pending. Her petition fits the statute's exception by requesting "a proceeding to contest an informally probated will ... within ... three years from decedent's death." *Id.*

12. The trial court's order did not specify which rule of civil procedure it was applying to quash Vieira's petition. Vieira brought one local rule to our attention: NMRA 1996, LR1–306(D). That rule requires five days' notice before an order may be presented to the court for signature after the other party fails to respond to a motion. NMRA 1996, LR1–304(B)(3) also has a five-day time limit. This rule requires five days' notice to opposing parties that a proposed order, decree, or judgment will be presented to the court for signature. The PR cites NMRA 1996, 1–006(C) as requiring five days, for service of a written motion and notice of a hearing on it, before the hearing.

■ 13. None of these provisions, however, is applicable to Vieira's cross-petition in this case. Here, Vieira presented no order for the trial court's signature. She requested a hearing to consider her petition, and she concluded her petition with a prayer for relief which asked that only after notice and a hearing should the court enter an order formally probating the earlier will and holding the later will void. This does not amount to requesting an order with less than five days' notice. Although her petition may contain the elements of a written motion, Vieira was not asking for the relief requested in the

petition to be granted at the January 16 hearing. The January 16 hearing was a hearing on the PR's petition to close the estate. The only relief that Vieira wanted the court to grant her at the January 16 hearing was to not close the estate.

14. We conclude that none of the cited rules mandating five days' notice apply to bar Vieira's petition. We therefore hold that the trial court erred by quashing Vieira's petition for a hearing to consider her objections to probate of the later will on the ground that the petition was not timely because it violated a five-day notice requirement.

*Waiver and Estoppel*

■ 15. We also hold that the doctrines of waiver and estoppel cannot bar Vieira's claims. The doctrine of waiver cannot apply to a party who has not expressly or unequivocally waived her rights. *See McCurry v. McCurry*, 117 N.M. 564, 567, 874 P.2d 25, 28 (Ct.App.1994). The doctrine of estoppel necessarily requires reasonable reliance to one's own detriment, based on the actions or inaction of another. *See Continental Potash, Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 698, 858 P.2d 66, 74 (1993), *cert. denied*, 510 U.S. 1116, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994). Here, there can be no assertion that the PR reasonably relied to his detriment on Vieira's failure to bring a claim sooner than four months after decedent's death, when the statutory limit is three years and when the probate had not been closed by formal proceedings of which Vieira was notified and to which she did not respond.

*Other Reasons for Quashing Petition*

16. The trial court quashed Vieira's petition on the additional grounds that Vieira had not produced another will or any substantial evidence of it, making her averments "speculative, hearsay, and without her personal knowledge." This language in the trial court's order suggests a ruling on a motion for summary judgment or a motion to dismiss. Such motions may be appropriate at certain stages of a will-contest case, but not

at the stage where the present case is postured. *See In re Estate of Kerr,* 137 Ariz. 25, 667 P.2d 1351, 1355 (Ct.App.1983) (upholding grant of summary judgment in a will-contest case after movant established prima facie case and where losing party failed to present any evidence supporting her allegations after almost two years of litigation); *In re Estate of Taylor,* 207 Mont. 400, 675 P.2d 944, 945 (1984) (affirming order of dismissal based solely on pleadings where, on its face, the petition to probate will violated statutory time limit for filing a claim).

17. A motion to dismiss should be granted only when a plaintiff or petitioner cannot obtain relief under any set of facts alleged in the complaint or petition. *Sanders v. Estate of Sanders,* 122 N.M. 468, 471, 927 P.2d 23, 26 (Ct.App.), *cert. denied,* 122 N.M. 279, 923 P.2d 1164 (1996). Summary judgment should not be granted when material issues of fact remain or when the facts are insufficiently developed for determination of the central issues involved. *National Excess Ins. Co. v. Bingham,* 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987).

■ 18. Applying these standards, we are unable to find any legal basis in the district court's order for treating the hearing on January 16 as one on the PR's motion to dismiss or for summary judgment and thereby quashing Vieira's petition. The PR had filed no such motions. He merely sought a ruling on his petition for an order approving the final accounting and discharging him from further claims. Vieira simply presented a petition for a hearing at a later date to consider her objections and claims. Where, as here, Vieira was merely requesting the opportunity to be heard, quashing her petition was not proper.

*CONCLUSION*

19. We reverse and remand with instructions for the trial court to set a date for a hearing on Vieira's claims.

20. **IT IS SO ORDERED.**

HARTZ, C.J., and ARMIJO, J., concur.