This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SHIRLEY MOLENAAR, as Trustee**
**of the De Graaf Family Trust,**

    Interested Party-Appellant,

and                                 **No. A-1-CA-35128**

**BETTY WATTLES, Personal Representative**
**and KEVIN DE GRAAF,**

    Interested Parties,

v.

**GORDON DE GRAAF, HARVEY DE GRAAF, PAUL DE GRAAF,**
**And DARYL DE GRAAF,**

    Interested Parties-Appellees,

**IN THE MATTER OF THE ESTATE OF HELENA DE GRAAF, Deceased**.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Law Office of Vanessa L. DeNiro
Vanessa L. DeNiro
Albuquerque, NM

for Appellant

Eric Ortiz & Associates

Eric N. Ortiz

Albuquerque NM

for Interested Parties

Gordon De Graaf,
Albuquerque, NM

Harvey De Graaf,
Albuquerque, NM

Paul De Graaf,
Los Lunas, NM

Daryl De Graaf
Albuquerque, NM

Pro Se Appellees

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

{1}     This is an appeal from an order of the district court denying a Rule 1-060(B)(4) NMRA motion filed by Appellant Shirley Molenaar as Trustee of the De Graaf Family Trust, seeking to set aside as void an order approving the partition and distribution of land to which the trust held title. We reverse.

**BACKGROUND**

{2}     The relevant facts and procedural history are taken from the district court's opinion and order.[1] Helena De Graaf died in 2006. On January 30, 2007, one of her children, Gordon De Graaf, filed an application for informal probate of Helena's will and appointment as personal representative of her estate (Estate). The court granted the application on February 1, 2007. On April 23, 2007, Gordon filed a motion to partition—i.e., subdivide and then distribute to Helena's heirs, including himself—certain land, the title to which he asserted was held by Helena at the time of her death and by the Estate since then. In fact, however, the De Graaf Family Trust (Trust) held title to a portion of the land described in the motion. In an order entered the same day, the district court granted the motion, approving the partition and distribution (2007 Order). In the fall of 2007, Gordon obtained the necessary government approval to complete the partition and executed deeds conveying the subdivided parcels to the heirs.

{3}     Neither Gordon nor the district court gave any of the other heirs notice of the informal probate proceeding, his motion for approval of the partition and distribution, or the 2007 Order. In February 2008, Gordon mailed the deeds to his siblings, including Molenaar, the Trustee of the Trust. After she received the deed, Molenaar had extended discussions with the De Graaf siblings/heirs about how to resolve the

---

[1] Appellant's brief in chief recites essentially the same facts. The Appellees filed no brief in this Court.

3

issues raised by the fact that the deeds purported to convey property that was owned by the Trust. In 2014, following the filing of a special master's report that confirmed the Trust's title to the partitioned land, Molenaar filed a motion pursuant to Rule 1-060(B)(4) to set aside the 2007 Order as void. The district court denied Molenaar's motion on September 9, 2015. Molenaar appeals.

**DISCUSSION**

**{4}** While an appellate court generally reviews the grant or denial of a Rule 1-060(B) motion for abuse of discretion, Rule 1-060(B)(4) motions seeking relief from void orders or judgments are reviewed de novo. *See Classen v. Classen*, 1995-NMCA-022, ¶ 10, 119 N.M. 582, 893 P.2d 478.

**A.** **Uniform Probate Code**

**{5}** Several provisions of the Uniform Probate Code (the Code), which New Mexico has adopted, NMSA 1978, §§ 45-1-101 to 45-7-612 (1975, as amended through 2017), inform our analysis.

**{6}** First, when the decedent has left a will, judicial involvement with an estate typically begins with the filing of an application for informal probate of the will and/or informal appointment of the personal representative of the estate, Section 45-3-301, or a petition for formal probate of a will, with or without a request for appointment of a personal representative, Section 45-3-401. Such a filing may

4

generate multiple "petitions" or "proceedings" within the single docketed court case, as reflected in Section 45-3-107, which provides that "each proceeding before the district court or probate court is independent of any other proceeding involving the same estate. Petitions for orders of the district court may combine various requests for relief in a single proceeding." Each petition is treated "as instituting a separate [civil] action," *In re Estate of Newalla*, 1992-NMCA-084, ¶ 14, 114 N.M. 290, 837 P.2d 1373, and each claim against the estate is treated as a separate proceeding. *See id.* ¶ 13.

{7}     Second, "[t]he distinctions between informal and formal proceedings include the degree of notice and judicial oversight required." *In re Estate of Duncan*, 2002-NMCA-069, ¶ 15, 132 N.M. 426, 50 P.3d 175, *rev'd sub nom. on other grounds by Estate of Duncan v. Kinsolving*, 2003-NMSC-013, ¶ 24, 133 N.M. 821, 70 P.3d 1260. "[I]nformal proceedings" are "those proceedings conducted without notice to interested persons . . . for probate of a will or appointment of a personal representative[.]" Section 45-1-201(A)(25). "[F]ormal proceedings" are "conducted before a . . . judge with notice to interested persons[.]" Section 45-1-201(A)(19). While informal proceedings are speedier and less costly, "formal proceedings provide greater certainty and finality. When a matter has been concluded by an order arising out of a formal proceeding, the decision ordinarily has certain res judicata effects."

*Vieira v. Estate of Cantu*, 1997-NMCA-042, ¶ 7, 123 N.M. 342, 940 P.2d 190; *see also* § 45-3-106 (providing that a court order is binding as to all who are given notice).

{8}     Third, under the Code, whether pursuant to informal or formal proceedings, judicial involvement following probate of the will and appointment of the personal representative may be quite limited or even non-existent. "Under the . . . Code, an estate may be distributed and closed in a simple manner by informal proceedings without further court order." *Vieira*, 1997-NMCA-042, ¶ 7. Similarly, after a will is formally probated and a personal representative is formally appointed, the personal representative may, following distribution of the estate's assets, simply file a verified closing statement in lieu of petitioning for an order approving complete settlement of the estate. *See In re Newalla*, 1992-NMCA-084, ¶¶ 10, 12; *see, e.g.*, § 45-3-704 (directing personal representative to proceed with settlement and distribution of estate without adjudication, order, or direction of the court); § 45-3-705(C), (D) (stating that notice that personal representative provides to heirs following his or her appointment shall state that estate is being administered without court supervision, but that recipients may petition the court "in any matter relating to the estate").

{9}     Fourth, because there can be multiple proceedings in a single estate filing, because not all proceedings in such a filing must be either informal or formal, and because a single proceeding may be converted from informal to formal, *see, e.g.*,

6

*Vieira*, 1997-NMCA-042, ¶¶ 8-9 (noting that a personal representative in informal proceedings may petition court for an order of settlement and an interested person may challenge informal probate of will), "the [Code] contemplates that the administration of a single estate can be a hybrid, involving both informal and formal proceedings." *In re Estates of Brown v. Dickinson*, 2000-NMCA-030, ¶ 12, 128 N.M. 825, 999 P.2d 1057; *see also In re Duncan*, 2002-NMCA-069, ¶¶ 14-15 (stating that the Code "allows for the administration of an estate to involve both informal and formal proceedings, in order to permit flexibility and efficiency . . . [and] the district court can shift back and forth between informal and formal probate proceedings" (citations omitted)). It follows that, if in an estate filing that initially is informal a petition is filed seeking a court order, that petition will be a formal proceeding and the rules governing informal proceedings will no longer apply, and notice must be given to interested persons.

{10} Fifth, because the Code treats each petition as instituting a separate action, "an order disposing of the matters raised in the petition should be considered a final, appealable order." *In re Newalla*, 1992-NMCA-084, ¶ 14. Accordingly, we treat the district court's order denying Molenaar's Rule 1-060(B)(4) motion as an appealable order.

**B.      The District Court Erred in Denying Molinaar's Rule 1-060 (B)(4) Motion**

7

{11} Rule 1-060(B)(4) provides: "On motion and on such terms as are just, the court may relieve a party or [his] legal representative from a final judgment, order, or proceeding for the following reason[]: . . . the judgment is void[.]" "The motion shall be made within a reasonable time[.]" Rule 1-060(B)(6).

{12} Molenaar argues that the Estate lacked authority to transfer title to the parcel in question, and that the 2007 Order is void because the Estate lacked standing and therefore the district court lacked subject matter jurisdiction. Alternatively, she argues that the partition and distribution of property is void because she—like her siblings—did not receive notice of the 2007 Order and therefore was denied due process. We disagree with Molenaar's first argument. Under the Code, the district court had subject matter jurisdiction to address matters raised in the probate and estate administration proceeding filed by Gordon, including requests for disposition of property he claimed was part of the Estate. We agree with Molenaar's second argument. The 2007 Order is void because the De Graaf heirs received no notice of the 2007 Order or Gordon's motion requesting the relief granted in the Order and so were deprived of due process.

**1.      The District Court Had Subject Matter Jurisdiction**

{13} "The district court has exclusive original jurisdiction over all subject matter relating to . . . formal proceedings with respect to the estates of decedents, . . .

8

jurisdiction to determine title to . . . real or personal property" (in the context of administering an estate), as well as "original jurisdiction over informal proceedings for probate of a will or appointment of a personal representative." Section 45-1-302. Pursuant to Sections 45-3-303(A)(3) and 45-3-308(A)(3), an application for informal probate of a will or appointment as personal representative, respectively, may be filed by anyone who is an "interested person" within the meaning of Section 45-1-201(A)(26) (including a child or heir of a decedent). Gordon possessed statutory standing to initiate a proceeding under the Code because Helena's will named Gordon as personal representative and, even if that were not so, Gordon was an "interested person" authorized to file an application for informal probate of Helena's will and appointment as personal representative. Further, the district court had original jurisdiction under the Code to address Gordon's application and subsequent motion.

{14} We note that Section 45-3-911 specifically authorized the district court to resolve matters concerning title to property claimed to be part of the Estate:

> A. When two or more heirs or devisees are entitled to distribution of undivided interests in any real or personal property of the estate, the personal representative or one or more of the heirs or devisees may petition the district court prior to the formal or informal closing of the estate to make partition.

> B. After notice to the interested heirs or devisees, the district court shall partition the property[.]

9

**2.     The 2007 Order Is Void Because the De Graaf Heirs Received No Notice and Were Deprived of Due Process**

{15}    It is undisputed that the De Graaf heirs received no notice of the 2007 Order or Gordon's motion requesting the relief granted in the 2007 Order as required by Section 45-3-911 and due process. Accordingly, the 2007 Order is void.

{16}    In *Eaton v. Cooke*, 1964-NMSC-137, ¶ 2, 74 N.M. 301, 393 P.2d 329, the plaintiff sued the defendant for injuries arising out of a motor vehicle accident. The defendant was never served with process, but a default judgment was entered against him. *Id.* ¶ 3. Six years later, the plaintiff sued the defendant in Oklahoma to enforce the judgment, and the defendant filed a motion in the New Mexico action to set aside the judgment, contending that the default judgment was void because he was never served. *Id.* ¶¶ 4, 9. The district court granted the motion and our Supreme Court affirmed, holding that "the court was without jurisdiction to enter the judgment and the judgment is void." *Id.* ¶ 6. The Court also held that, notwithstanding Rule 1-060(B)(6)'s requirement that such a motion must be filed within a reasonable period of time, "where the judgment was void, [Rule 1-060 (B)(4)] does not purport to place any limitation of time." *Eaton*, 1964-NMSC-137, ¶ 7; *accord Chavez v. Cty. of Valencia*, 1974-NMSC-035, ¶ 15, 86 N.M. 205, 521 P.2d 1154 (holding that a Rule 1-060(B)(4) motion to set aside a void judgment may be made "long after the judgment has been entered"); *cf. In re Estate of Baca*, 1980-NMSC-135, ¶¶ 9-10, 95

10

N.M. 294, 621 P.2d 511 (upholding collateral attack on a 1950 judgment in an estate proceeding stating "[a] judgment which is void is subject to direct or collateral attack at any time").

{17}   Our conclusion that the 2007 Order is void is not altered by the fact that Molenaar received notice of the 2007 Order when she received the deed to a subdivided parcel in 2008. *Nesbit v. City of Albuquerque*, 1977-NMSC-107, ¶¶ 1, 12, 91 N.M. 455, 575 P.2d 1340, applied Rule 1-060(B)(4) in the context of a land development dispute. Developers sought municipal approval in 1972 of an amended development plan that would significantly increase the density of development of their land. *Nesbit*, 1997-NMSC-107, ¶ 1. The municipality initially had rejected the plan, but on appeal, the district court in 1973 had reversed the 1972 administrative decision and the municipality thereupon approved the plan. *Id.* In 1976, when the developer began construction, neighboring landowners filed a motion to set aside the 1973 judgment based on the developer's failure to comply with statutory notice requirements for the 1972 administrative proceedings and decision. *Id.* ¶¶ 1-2. The district court agreed, and on appeal our Supreme Court affirmed. *Id.* ¶ 14. "By failing to follow statutory procedures, due process of law was violated" and, as a result, the proceedings were void. *Id.* ¶¶ 8, 11. Further, the fact that the developer may have provided proper notice for the appeal that led to the district court's 1973 ruling did not

11

affect this result because "a judgment which is void cannot be cured by subsequent proceedings." *Id.* ¶ 10. The Court explained:

> Since the 1973 judgment was void, the 1976 district court was required to set it aside pursuant to [Rule 1-060(B)(4)]. There is no discretion on the part of a district court to set aside a void judgment. Such a judgment may be attacked at any time in a direct or collateral action.

*Nesbit*, 1977-NMSC-107, ¶ 12. The 2007 Order at issue in this case was a nullity at inception and remained so.

{18} Nor was Molenaar's Rule 1-60(B)(4) motion untimely. Notwithstanding a six-year delay in moving to set aside a judgment, in *Eaton* our Supreme Court rejected in categorical terms the plaintiff's laches argument, stating that Rule 1-060(B)(4) "does not purport to place any limitation of time. . . . The argument advanced by [the plaintiff] that [the defendant] could not be excused from proceeding promptly to move to set aside the judgment . . . has no application where the situation is one such as is here present[.]" *Eaton*, 1964-NMSC-137, ¶¶ 7, 9 (citations omitted).

{19} Additionally, in *Marinchek v. Paige*, 1989-NMSC-019, ¶ 2, 108 N.M. 349, 772 P.2d 879, the plaintiff sued to collect a debt. While the case was pending, the defendant moved and terminated contact with his lawyer. *Id.* ¶ 3. The lawyer moved to withdraw from the case and mistakenly provided an incorrect address for the defendant. *Id.* The order granting the withdrawal was sent to the wrong address, so the defendant had no notice of the need to obtain new counsel or appear pro se. *Id.* A

default judgment subsequently was entered against the defendant. *Id.* ¶ 4. When he learned of the default judgment a year and a half later, the defendant moved to set aside the judgment. *Id.* ¶ 5. The district court granted the motion, and our Supreme Court reversed. *Id.* ¶ 15.

{20}    Our Supreme Court's decision turned on whether the motion to set aside the default judgment was properly characterized as based on a claim of excusable neglect (pursuant to Rule 1-060(B)(1)) or a claim that the judgment was violative of due process and thus void (pursuant to Rule 1-060(B)(4)). *Marinchek*, 1989-NMSC-019, ¶¶ 9-10. The Court ultimately determined that, because the failure of notice was attributable to the defendant's own lawyer as opposed to the plaintiff or the court, the defendant could not claim a due process violation and thus Rule 1-060(B)(1) was applicable. *Marinchek*, 1989-NMSC-019, ¶¶ 14-15. Because Rule 1-060(B)(1) motions must be filed within one year of entry of judgment, the motion failed. *See Marinchek*, 1989-NMSC-019, ¶ 15. In reaching its decision, however, the Court described the circumstances under which a lack of notice of court action can violate due process and thus void a judgment:

> The state violates due process when it effects a deprivation of property without notice and an opportunity to be heard. Due process requires only that notice be reasonably calculated, under all the circumstances, to inform parties of the pendency of the action and afford them the opportunity to present their objections.

*Id.* ¶ 11 (citation omitted).

{21} In *Classen*, 1995-NMCA-022, ¶ 3, a wife filed for divorce. Claiming that her husband could not be located, she served process constructively by publication. *Id.* ¶ 4. The district court subsequently entered judgment granting the divorce, divided the couple's property, and awarded the wife sole custody of their children. *Id.* ¶ 5. Two years later, the husband moved to set aside the judgment pursuant to Rule 1-060(B)(4), arguing that the wife in fact had been aware that husband was living in Arizona at an address that she possessed. *Classen*, 1995-NMCA-022, ¶ 6.

{22} On appeal following the district court's denial of the motion, this Court reversed. *Id.* ¶ 1. First, a judgment is void "if the court rendering it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *Id.* ¶ 10 (emphasis, internal quotation marks, and citation omitted). Second, due process at minimum requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* (internal quotation marks and citation omitted). Third, after determining that constructive notice by publication did not satisfy due process where the wife in fact knew the husband's whereabouts, this Court concluded that because "service did not meet due process standards, the judgment [was] voidable at any time under [Rule] 1-060(B)(4)." *Classen*, 1995-NMCA-022, ¶ 13.

14

## 3. The District Court's Analysis Was Flawed

{23}     In its September 9, 2015 opinion and order, the district court discussed at some length its reasons for concluding that Molenaar was not entitled to set aside the 2007 Order notwithstanding the lack of notice given to any of the heirs.

{24}     First, the court pointed to provisions in the Code that it determined demonstrate a statutory intent generally that lack of notice to heirs does not operate to void actions by a personal representative. For example, the Code does not require a personal representative to give heirs notice of an application for informal probate. Section 45-3-306(A). And while the personal representative must inform the heirs by ordinary mail once informal probate is granted, failure to do so, though it constitutes a breach of the personal representative's duty owed to the heirs, does not affect the validity of the probate. Section 45-3-306(B). Similarly, Section 45-3-302 provides that "[n]o defect in the application or procedure relating thereto which leads to informal probate of a will renders the probate void."

{25}     The flaw in the district court's reliance on these provisions is that they apply only to the *probating*, i.e., validation, of the will in question. "The word 'probate' comes from the Latin 'probatio,' meaning proof. As applied to the law of wills, it means the proof or establishment . . . that the document produced is the valid last will of the deceased." Thomas E. Atkinson, *Handbook of the Law of Wills* 480 (2nd ed.

15

1953). These provisions do not apply to other actions and transactions undertaken during the course of administration of the estate, which are separate and distinguished from the probating of the will. *Compare* §§ 45-3-302 to -306 (addressing process of informally probating a will), *and* §§ 45-3-401 to -413 (addressing process of formally probating a will), *with* §§ 45-3-308 to -311 (addressing process of informal appointment of personal representative), § 45-3-414 (addressing process of formal appointment of personal representative), *and* §§ 45-3-703 to -711 (addressing personal representative's powers and duties). Molenaar does not challenge the probate of Helena's will, only the order approving the distribution of the parcels the title to which was held by the Trust. Even assuming for the sake of argument that these Code provisions could override constitutional infirmities regarding notice, the Code does not purport to provide that a personal representative's failure to provide notice to heirs of a request to authorize distribution of property that he claims belongs to the estate does not invalidate any resulting order authorizing the distribution.

{26}     As further support for its conclusion that lack of notice did not void the 2007 Order, the district court noted Section 45-3-705, which generally addresses the duty of the personal representative to give notice of his appointment to heirs. Section 45-3-705(F) states that "[t]he personal representative's failure to give notice pursuant to this section is a breach of duty to the persons concerned but does not affect the validity of

the appointment, the personal representative's powers or other duties." This provision concerns only the consequences of failure to provide notice of the appointment. Molenaar does not challenge the appointment or claim that Gordon's failure to provide notice of his appointment invalidated the partition, rather, her motion to set aside the 2007 Order is based on Gordon's (and the court's) failure to provide notice of the partition motion and order, i.e., violation of Section 45-3-911 quoted above as opposed to Section 45-3-705. Section 45-3-911 contains no language suggesting that a failure of notice of a request for approval of partition of estate property does not operate to void such action. In any event, the invalidation stems not from language in the Code, but rather from the constitutional due process violation as articulated in the case law discussed above.

**{27}** The district court also noted that, pursuant to Section 45-3-713, where a personal representative has a conflict of interest, the transaction at issue is only voidable as opposed to void. Because a determination of the existence of a conflict of interest would not implicate due process concerns, we do not find this point material to a determination of the impact—voidance as opposed to voidability—of lack of notice of a court order approving the personal representative's disposition of property in which the heirs and other interested parties may have an interest.

17

{28} Second, citing Section 45-3-704 and Section 45-3-715(A)(6), the district court observed that the Code affirmatively authorizes a personal representative to acquire, develop, partition, and dispose of estate assets, as well as distribute assets to heirs, without notice or court approval. All of that is correct, but beside the point. As discussed above, a basic principle of the Code is to permit a personal representative, especially in an informal proceeding, to act without court involvement. Sections 45-3-704. But crucially, once the personal representative invokes the court's involvement and approval, which as discussed above effectively converts for that limited purpose any informal proceeding into a formal proceeding, he or she must provide notice that complies with the Code and, more generally, due process requirements. Section 45-3-911(B), in particular, specifically mandates notice in the event a personal representative seeks court approval of a partition. The presumptive rationale underlying the notice requirement where court approval is sought is that, with notice, the court's order will have claim preclusion effects. *See Vieira*, 1997-NMCA-042, ¶ 7 ("When a matter has been concluded by an order arising out of a formal proceeding, the decision ordinarily has certain res judicata effects."). Thus, once Gordon filed his motion seeking the district court's approval of the 2007 partition, he initiated a formal proceeding that rendered inapplicable Section 45-3-704 and Section 45-3-715(A)(6). Instead, he was required to provide notice. When he did not, entry of the 2007 Order

18

violated the due process rights of Molenaar and any of the other De Graaf siblings who did not receive notice and as a result the 2007 Order is void.

{29} Third, the district court determined that the three-year statute of limitations, set forth in Section 45-3-1006, operated to bar Molenaar's claim under Rule 1-060(B)(4) that the 2007 Order was void for lack of notice. Section 45-3-1006 provides that

> the claim of a claimant to recover from a distributee who is liable to pay the claim and the right of an heir or devisee or of a successor personal representative acting in their behalf to recover property improperly distributed or its value from any distributee is forever barred at the later of three years after the decedent's death or one year after the time of its distribution[.]

The district court reasoned that Molenaar's Rule 1-060(B)(4) motion effectively amounted to a claim to recover from the other De Graaf heirs the parcels that had been distributed to them, and therefore the three-year limitation period barred Molenaar's motion as of 2011, three years after the parcels were distributed. Citing *Tafoya v. Doe*, 1983-NMCA-070, ¶ 20, 100 N.M. 328, 670 P.2d 582, the court further concluded that a three-year limitations period was a reasonable and complied with due process.

{30} This Court has construed Section 45-3-1006 to establish a three-year statute of limitations for actions to challenge the distribution of estate assets. *See In re Estate of Gardner*, 1992-NMCA-122, ¶ 18, 114 N.M. 793, 845 P.2d 1247; *see also In re Estate of Kemnitz*, 1981-NMCA-013, ¶ 9, 95 N.M. 513, 623 P.2d 1027. Molenaar however, sought relief expressly authorized by Rule 1-060(B)(4), which is not subject

19

to the limitations of Section 45-3-1006. Because, as we have concluded, the 2007 Order violated due process and thus was void ab initio as a matter of constitutional law, it cannot be given any legal efficacy or other significance at the end of three years or some other period of time. Stated another way, the due process infirmity at issue here stems not from the length (and resulting reasonableness vel non) of the limitations period set forth in Section 45-3-1006, but rather from the lack of notice provided to Molenaar and her siblings of the 2007 Order.

{31}     Lastly, the district court concluded that the lack of notice did not rise to the level of a due process violation, distinguishing the cases discussed above based on Molenaar's delay in filing her Rule 1-060(B)(4) motion:

> Although Gordon's failure to give [Molenaar] written notice prior to entry of the 2007 Order prevented her participation in, and presumably, her correction of, the inclusion of trust property, [Molenaar] had actual notice of the property distribution when she received the deed, and almost two years under the Probate Code to challenge the Order. The [c]ourt concludes that there was no due process violation in the present matter under the particular circumstances of this case.

This reasoning reflects the district court's error in applying Section 45-3-1006's three-year limitations period to Molenaar's Rule 1-060(B)(4) motion, and in failing to recognize that neither laches nor any other temporal consideration is a defense to such a motion. *See Eaton*, 1964-NMSC-137, ¶ 7 (holding that "where the judgment was void, [Rule 1-060(B)(4)] does not purport to place any limitation of time"); *see also*

20

*Nesbit*, 1977-NMSC-107, ¶¶ 10, 12 (stating that "a judgment which is void cannot be cured by subsequent proceedings" and "[s]uch a judgment may be attacked at any time"); *Chavez*, 1974-NMSC-035, ¶ 15 (observing that Rule 1-060(B)(4) motion to set aside judgment may be made "long after the judgment has been entered"); *Classen*, 1995-NMCA-022, ¶ 13 (holding that "[i]f service did not meet due process standards, the judgment is voidable at any time under [Rule] 1-060(B)(4)").

**CONCLUSION**

{32}     We reverse and set aside the 2007 Order as void.

{33}     **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**J. MILES HANISEE, Judge**

21